UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00035-GNS

LAURA ROGERS                                                                    PLAINTIFF

v.

GRAY MEDIA GROUP, INC. and                                          DEFENDANTS
GRAY TELEVISION GROUP, INC.


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 8) and Plaintiff's Motion for Speedy Hearing (DN 7). These motions are ripe for adjudication. For the reasons outlined below, Plaintiff's motions are **DENIED**.

I.          **STATEMENT OF FACTS**

On August 26, 2014, Laura Rogers ("Rogers") entered into an employment agreement ("Agreement") with Gray Television Group ("Gray Television") to serve as the producer and host of the morning and midday segments for WBKO TV. (Compl. ¶ 5, DN 1-1). Under the Agreement, the initial term of Rogers' employment began on September 22, 2014, and ended two years later. (Compl. ¶ 5). Gray Television retained and exercised the right to extend Rogers' Agreement through November 15, 2018. (Pl.'s Mot. Summ. J. Ex. A, at 2, DN 8-3 [hereinafter Employment Agreement]; Compl. ¶ 7). Of particular importance, the Agreement contained a noncompete provision that prohibited Rogers from working for other news stations in the market for one year after her employment ended with Gray Television. (Pl.'s Mem. Supp. Mot. Summ. J.

2, DN 8-2; Employment Agreement 8-9).  After expiration of the Agreement in 2018, Rogers continued to work for Gray Television.  With no new employment contract, Rogers claims she became an at-will employee under Section 4(e) of the Agreement.  (Compl. ¶ 8).

Rogers continued to work as an at-will employee for Gray Media Group LLC ("Gray Media")[1] until her resignation on December 31, 2021.  (Compl. ¶ 11).  Subsequently, Rogers alleges she advised potential employers of the noncompete provision, and they refused to hire her without a release from Gray Media or a legal adjudication of the provision's enforceability.  (Compl. ¶ 14).  Rogers avers that she has repeatedly sought release from Gray Television but these requests have been denied.  (Compl. ¶ 15).

As a result, Rogers filed suit against Gray Media and Gray Television ("Defendants") in Warren Circuit Court (Kentucky) seeking declaratory relief from the noncompete provision of the Agreement.  Defendants timely removed the action to federal court.  (Notice Removal, DN 1).  Now, Rogers has moved for a speedy hearing and summary judgment (DN 7, 8).  Defendants oppose both motions but advance an alternative argument for a stay on the summary judgment until after there has been ample time for discovery.  (Defs.' Resp. Pl.'s Mot. Speedy Hr'g, DN 14; Defs.' Resp. Pl.'s Mot. Summ. J. 4, DN 15).

## II.    JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon diversity of citizenship.  28 U.S.C. § 1332(a)(1).

---

[1] Gray Television tendered a certificate of withdrawal to the Kentucky Secretary of State's office in August 2019, presumably ceasing business under that name in Kentucky.  (Compl. ¶ 9).  Gray Media acquired the rights to WBKO TV and became Rogers' employer.  (Compl. ¶ 10).

### III. STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Genuine issues of material fact remain where there are "factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Evidence must be viewed in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV. DISCUSSION

#### A. Motion for Summary Judgment

Rogers seeks summary judgment because "the terms and conditions of the employment agreement expired in November of 2018, [and], no valid covenant not to compete existed at the time of [her] departure."[2]  (Pl.'s Mem. Supp. Mot. Summ. J. 1).  Two provisions of the Agreement are pertinent to Rogers' argument regarding unenforceability by expiration:  (1) the noncompete provision in Section 10 which prevents Rogers from providing similar services to competitors "within all or any portion of the Designated Market Area ('DMA') of the [s]tation" for "the one-year period following termination of *employment* . . . ;"  and (2) Section 4(f), which references the noncompete provision and provides that "[a]fter [November 15, 2018], [Rogers] will remain subject to all provisions of this Agreement that ordinarily survive such termination, *including*

---

[2] Rogers recognizes Kentucky courts generally enforce reasonable noncompete agreements with reasonableness determined by factors such as "geographic scope, duration, or satisfactory consideration . . . ." (Pl.'s Mem. Supp. Mot. Summ. J. 4).  Beyond this acknowledgement, Rogers has not argued this provision is unreasonable, only that the provision is unenforceable by expiration.

*without limitation, Sections 8-10 of Attachment A.*" (Employment Agreement Attach. A, at 8-9; Employment Agreement 2 (emphases added)).

When interpreting a contract, it "must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). The Agreement specified Rogers' "initial period of employment" ran through September 21, 2016. (Agreement § 4(c)). Gray Television then had two additional options to extend the Agreement for 12 months each, all of which were "referred to as the Term", after which Rogers became an at-will employee. (Agreement § 4(e)). The Agreement further provided that "[a]fter the Term, [Rogers] will remain subject to all provisions of this Agreement that ordinarily survive such termination, including without limitation, Sections 8-10 of Attachment A." (Agreement § 4(f)). Section 10 of Attachment A restricts Rogers from working for another television station or other competitor of Gray "for one year following termination of employment, regardless of the reason for the termination . . . ." (Agreement Attach. § 10). Thus, under the clear terms of the Agreement, Rogers is prohibited from employment with a competitive media business for one year after her resignation on December 31, 2022, which period will expire on December 31, 2022.

Rogers cites *Burke v. Fine*, 608 N.W.2d 909 (Minn. Ct. App. 2000), where an employment agreement contained a noncompete provision restricting the employee after termination of employment, rather than the agreement. *Id.* at 910. Similar to Rogers, the employee continued to work for the employer past the stated term of the agreement. *Id.* The court held the provision did not extend past termination of the agreement because termination of the agreement also terminated its terms. *Id.* at 913. *Burke*, however, is not persuasive because the court specifically noted the employer had "not cited any language in the employment contract that indicate[d] the noncompete agreement was to survive the termination of the underlying contract." *Id.* at 912. In contrast,

Section 4(f) of the Agreement expressly provides that the noncompete provision extends "for one year following termination of employment, regardless of the reason for the termination . . . ." (Agreement Attach. § 10).

Additionally, Rogers cites *Mountain Comprehensive Health Corp. v. Gibson*, No. 2013-CA-000373-MR, 2015 Ky. App. Unpub. LEXIS 158 (Ky. App. Mar. 13, 2015), for the assertion that "'termination' [occurs] as the result of the expiration of [a] contract." (Pl.'s Mem. Supp. Mot. Summ. J. 7). *Gibson* differs factually in that the termination of the agreement and employment occurred on the same day. *Gibson*, 2015 Ky. App. Unpub. LEXIS, at *3, *6. By contrast, Rogers' employment with Gray extended beyond the stated "Term" of the Agreement, with termination of her employment occurring three years later. *Gibson* did not contemplate a situation where the termination of an agreement and employment occurred at different times, thus it offers no guidance on this matter.

Therefore, based on the language of the Agreement, Rogers fails to meet her burden of demonstrating that she is entitled to judgment as a matter of law. Accordingly, her motion for summary judgment is denied.

### B.   Motion for Speedy Hearing (DN 7)

Rogers asserts that prospective employers refuse to hire her until Gray Media grants her release from the noncompete provision of the Agreement, resulting in her continued unemployment. (Pl.'s Mot. Speedy Hr'g 1, DN 7). Rogers seeks a speedy hearing under Fed. R. Civ. P. 57 because she believes Gray Media will attempt to delay the matter as long as possible to

render the noncompete issue moot, resulting in an inability to earn an income for a full year.  (Pl.'s Mot. Speedy Hr'g 1).[3]

Fed. R. Civ. P. 57 authorizes "[t]he court [to] order a speedy hearing of a declaratory-judgment action."  "Beyond this general statement authorizing district courts to permit a speedy hearing, Rule 57 does not provide specific guidance as to the circumstances in which an expedited proceeding will be appropriate."  *GBX Assocs., LLC v. United States*, No. 1:22cv401, 2022 U.S. Dist. LEXIS 63498, at *7 (N.D. Ohio Apr. 5, 2022) (citation omitted).  A speedy hearing may be appropriate where the determination is based primarily on legal issues, rather than factual.  *Id.* at *7-8.  A speedy hearing is also permissible where there is a "need for urgency."  *Id.* at *8 (internal quotation marks omitted) (quoting *Cnty. of Butler v. Wolf*, No. 2:20-cv-677, 2020 U.S. Dist. LEXIS 93484, at *2 (W.D. Pa. May 28, 2020)).  Ultimately, courts have broad discretion in deciding whether to grant a speedy hearing.  *Id.*

A speedy hearing is not appropriate at this time, as some factual matters could merit discovery.  Defendants note several factual issues which need to be addressed, including "alleged conversations with the news director and general manager . . . ; alleged conversations with

---

[3] Defendants argue Fed. R. Civ. P. 57 cannot be invoked because Rogers did not bring her action under 28 U.S.C. § 2201, as required by the language of the rule.  (Defs.' Resp. Pl.'s Mot. Speedy Hr'g 4).  Here, Rogers initially filed in state court, seeking declaratory judgment under Kentucky law.  (Compl. ¶ 20).  The case was later removed.  (Notice Removal).  Although the Complaint does not assert a declaratory judgment action under Section 2201, "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought pursuant to the federal Declaratory Judgment Act."  *Hinkel Excavation & Constr., Inc. v. Constr. Equip. Int'l, Ltd.*, No. C00-4090, 2000 U.S. Dist. LEXIS 22176, at *7-8 (N.D. Iowa Nov. 20, 2000) (citing *Toops v. U.S. Fid. & Guar. Co.*, 871 F. Supp. 284, 287 n.2 (S.D. Tex. 1994), *rev'd on other grounds sub nom*, *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483 (5th Cir. 1996)); *see also Grizzly Processing, LLC v. Wausau Underwriters Ins. Co.*, No. 7:08-226-KKC, 2009 U.S. Dist. LEXIS 113370, at *3 (E.D. Ky. Dec. 4, 2009) (analyzing a state declaratory judgment action under the federal Declaratory Judgment Act).  Therefore, Rogers' Rule 57 motion will be addressed on the merits.

prospective employers . . . ; [and] alleged communications with Defendants' counsel." (Defs.' Resp. Pl.'s Mot. Speedy Hr'g 3 (internal citations omitted)).  Thus, at this point, the Court is "not convinced . . . that no discovery of any kind will be necessary . . . ." *GBX Assocs.*, 2022 U.S. Dist. LEXIS 63498, at \*11.  Therefore, Rogers' motion for a speedy hearing is denied.

**V.**   <u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (DN 8) and Plaintiff's Motion for Speedy Hearing (DN 7) are **DENIED**.

Greg N. Stivers, Chief Judge

United States District Court

October 17, 2022

cc:    counsel of record